IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| WILLIAM J. and PHYLLIS W. SAUDERS, et al., | ) ) ) | C.A. No.: 2:93-3077-23 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SOUTH CAROLINA PUBLIC SERVICE AUTHORITY, d/b/a SANTEE COOPER, | ) ) ) | |
| Defendant. | ) ) | |
| WILLIAM J. and PHYLLIS W. SAUDERS, et al., | ) ) ) | C.A. No.: 2:97-0673-23 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SOUTH CAROLINA PUBLIC SERVICE AUTHORITY, d/b/a SANTEE COOPER, | ) ) ) | |
| Defendant. | ) ) | |
| HERBERT BUTLER, et al. | ) ) | C.A. No.: 2:03-0934-23 |
| Plaintiff, | ) ) ) | **ORDER** |
| v. | ) ) | |
| SOUTH CAROLINA PUBLIC SERVICE AUTHORITY, d/b/a SANTEE COOPER, | ) ) ) | |
| Defendant. | ) ) | |

This matter is before the court on Plaintiff's motion for attorneys' fees and costs pursuant to South Carolina Code section 28-11-30.

**BACKGROUND**

On July 1, 2004, the Court issued an Order finding that the Plaintiffs in the 1993 action were entitled to prejudgment interest as well as "reasonable attorneys' fees and costs" on any recovery they may receive arising out of their inverse condemnation claims pursuant to South Carolina Code section 28-11-30. Subsequent to that Order, on February 24, 2008, the 1993 action, the 1997 action, and the 2003 action were consolidated in order to mediate all the claims (inverse condemnation and trespass claims) of all the Plaintiffs and to have the Court issue legal rulings and findings of fact that would be binding upon all parties. The Court has awarded damages to all Plaintiffs whom the Court has determined were entitled to recovery from the 1993, 1997, and 2003 consolidated action, and the Court has awarded prejudgment interest on those damages. Santee Cooper has paid the damages awarded and the prejudgment interest in full to those Plaintiffs. The only issue remaining in this action is the *amount* of reasonable attorneys' fees and costs due to the Plaintiffs.

**ANALYSIS**

Under the "American Rule," the parties to a lawsuit generally bear the responsibility of paying their own attorneys' fees and costs. *See Layman v. State,* 658 S.E.2d 320 (S.C. 2008), *citing Pennsylvania v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546 (1986). South Carolina and other jurisdictions recognize exceptions to this rule, including the award of attorneys' fees pursuant to a statute. *See Jackson v. Speed,* 486 S.E.2d 750 (S.C. 1997). A statutory award of attorneys' fees is typically authorized under what is known as a "fee-shifting statute," which permits a prevailing party to recover attorneys' fees from the losing party. *See Blum v. Stenson,* 465 U.S. 886, 893 (1984). Along with a "fee-shifting" statute, the South Carolina Supreme Court has recently recognized that reasonable attorneys' fees may be awarded

pursuant to a "fee-spreading" doctrine, like a common fund award. *Layman,* 658 S.E.2d at 329-30. Though both methods require only the award of attorneys' fees in an amount that is reasonable, the calculation of the award is done differently in attorneys' fees awarded pursuant to a "fee-shifting" statute as opposed to attorneys' fees awarded pursuant to a common fund or a "fee-spreading" doctrine. As stated by the South Carolina Supreme Court in *Layman*:

> The common fund doctrine allows a court in its equitable jurisdiction to award reasonable attorneys' fees to a party who, at his own expense, successfully maintains a suit for the creation, recovery, preservation, or increase of a common fund or common property. Attorneys' fees awarded pursuant to the common fund doctrine come directly out of the common fund created or preserved. The justification for awarding attorneys' fees in this manner is based on the principle that "one who preserves or protects a common fund works for others as well as for himself, and the others so benefited should bear their just share of the expenses."
>
> A key distinction between the award of fees authorized by statute and the award of fees from a common fund is that the equitable principles underlying the common fund doctrine create a mechanism in which attorneys' fees are not assessed against the losing party by *fee-shifting,* but rather, are taken directly from the common fund or recovery and borne by the prevailing party through *fee-spreading.* To reflect this distinction, courts generally hold that a "lodestar" approach reflecting the amount of attorney time reasonably expended on the litigation results in a reasonable fee under a fee-shifting statute. Conversely, when awarding fees to be paid from a common fund, courts often use the common fund itself as a measure of the litigation's "success." These courts consequently base an award of attorneys' fees on a percentage of the common fund created, known as the "percentage-of-the-recovery" approach.
>
> . . .
>
> In our view, utilizing common fund methodology when awarding attorneys' fees pursuant to a fee-shifting statute is wholly inappropriate in light of the underlying theoretical distinction between a common fund source of attorneys' fees and a statutory source of attorneys' fees. Although both sources are exceptions to the general rule that each party is responsible for the party's own attorneys' fees, the common fund doctrine is based on the equitable allocation of attorneys' fees among a benefited group, and not the shifting of the attorneys' fee burden to the losing party. This Court certainly acknowledges that a percentage-of-the-recovery approach may be appropriate under circumstances in which a court is given jurisdiction over a common fund from which it must allocate attorneys' fees among a benefited group of litigants. However, where, as here, a fee-shifting

3

> statute shifts the source of reasonable attorneys' fees entirely to the losing party, we find it both illogical and erroneous to calculate fees using the methodology justified under a fee-spreading theory.

*Layman,* 658 S.E.2d at 329-30 (internal citations omitted).

Both parties agree that Plaintiffs are entitled to reasonable attorneys' fees and costs pursuant to South Carolina Code section 28-11-30. However, Plaintiffs claim that § 28-11-30 is a "reimbursement statute, rather than a fee-shifting one," and claim that Plaintiffs are entitled to an amount of attorneys' fees based upon their contingency fee agreement with the Bell Legal Group. Plaintiffs also claim that *Layman* is not controlling upon the determination of attorneys' fees in this case and instead point to *Vick v. S.C. Dep't of Transp.,* 556 S.E.2d 693 (S.C. Ct. App. 2001) as the key case to support an award of attorneys' fees based upon a contingency fee agreement. Defendant agrees that attorneys' fees should be awarded in this case but argues that those fees must be reasonable based upon the lodestar approach (and not based on a percentage of recovery) and that the attorneys' fees must be based upon the time spent pursuing Plaintiffs' inverse condemnation claims and not litigating other claims for which no recovery of attorneys' fees is permitted. A lodestar figure is designed to reflect the reasonable time and effort involved in litigating a case, and is calculated by multiplying a reasonable hourly rate by the reasonable time expended. *See Layman,* 658 S.E.2d at 332 (citing *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 652 (4th Cir. 2002). "Using this as a starting point for reasonableness, a court may consider other factors justifying an enhancement of the lodestar figure with a 'multiplier' before arriving at a final amount." *Layman,* 658 S.E.2d at 332.

Section 28-11-30 provides in pertinent part:

> Where an inverse condemnation proceeding is instated by the owner of any right, title or interest in real property because of use of his property in any program or project, the court, rendering a judgment for the plaintiff in such proceeding and awarding compensation for the taking of property, or the attorney effecting a

4

> settlement of any such proceeding, shall determine and award or allow to such plaintiff, as a part of such judgment or settlement, such sum as will, in the opinion of the court or the agency's attorney, reimburse such plaintiff for his reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of such proceedings.

S.C. Code Ann. § 28-11-30(3).

As mentioned above, Plaintiffs claim that pursuant to section 28-11-30 they are entitled to attorneys' fees in an amount equal to their contingency fee contract with the Bell Legal Group. Plaintiffs have entered into a contract with the Bell Legal Group to pay a contingency fee percentage of any recovery to the Bell Legal Group plus all expenses incurred by the Bell Legal Group in prosecution of their cases. The contract contemplated two possible outcomes of the case and assigned different percentages to each: "One-third of your recovery reached by settlement prior to beginning trial preparations…" or "[f]orty percent of your recovery reached through settlement after trial preparation begins or through any judgment whether by judge, jury. . . ." Both parties agree that the latter, forty-percent fee, applies to the Plaintiffs award in this case. Plaintiffs claim that they are entitled to forty percent of each Plaintiff's recovery plus their pro rata share of litigation expenses.

Specifically, Plaintiffs point to the South Carolina Court of Appeal's decision in *Vick*, 556 S.E.2d at 693, as the controlling law for determining reasonable attorneys' fees in inverse condemnation actions. In *Vick*, a property owner brought an inverse condemnation action against the South Carolina Department of Transportation ("SCDOT"), alleging damage to a private road caused by SCDOT's improper installation of drainage pipes. *Id.* at 696. After a finding by the master-in-equity that the road was privately owned and had not been dedicated to the public, the Circuit Court entered judgment on the jury verdict awarding the property owner $134,261.52 in actual damages, $41,425.00 in attorney fees, and $2,678.58 in costs. *Id.* The

Circuit Court awarded Vick attorneys' fees pursuant to S.C. Code Ann. § 28-2-510(A) (1991). *Id.* After the trial, Vick's attorney submitted an affidavit stating that he had worked for Vick in the past at an hourly rate of $130, but in this case the fee agreement called for a one-third contingency fee. Vick's attorney stated that he spent 137.2 hours on this matter, plus 59.1 hours by an associate, and 7.7 hours of paralegal time. *Id.* The Circuit Court awarded Vick $41,424.00 in attorney fees and $2,678.58 for costs. *Id.*

SCDOT appealed claiming that the land was not private and had been dedicated, that the verdict exceeded the scope of the evidence, and the amount of attorney fees awarded was excessive. *Id.* at 697-701. The Court of Appeals found that "[t]o the extent SCDOT asserts the attorney fees are excessive because they exceed the amount that would be due on an hourly basis, this issue also was not preserved. . . . In any event, the award was not error." *Id.* at 700. The Court of Appeals found that this award was not in error. *Id.* The Court of Appeals first stated the general principle that "[i]n determining an award of attorney fees, the court should consider the following six factors: '(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services.'" *Id.* Based upon those factors, the Court of Appeals found that the "circuit judge's order in this case shows that he considered these factors in determining a figure he believed constituted reasonable compensation." *Id.* at 701.

Plaintiffs point to *Vick* to demonstrate that "where a fee agreement in an inverse condemnation case calls for a contingency fee to be awarded [to] the attorney, the court may award a percentage of the recovery equal to, or approximating, the amount the landowner owes to his attorney, even though this amount exceeds the amount due on an hourly basis, as a

6

reimbursement to Plaintiffs of those fees already 'actually incurred.'" Pl's Mem. at 5.  Lastly, Plaintiffs argue that awarding fees pursuant to the contingency fee agreement is also necessary to insure the Plaintiffs are awarded just compensation for Defendant's taking of their property. Plaintiffs conclude that when analyzing the additional five factors in conjunction with the contingency fee agreement, the Court should award Plaintiffs attorney fees in the amount of 40% of each Plaintiff's total recovery, plus costs.

Defendant argues that an award of attorney fees equal to Plaintiffs' contingency fee agreement with the Bell Legal Group is in direct contradiction to South Carolina Law. Defendant claims that South Carolina specifically rejects an award of attorneys fees based solely upon the contingency agreement between the client and their attorney.  Def's Mem. at 5 (citing *Columbia (S.C.) Teachers Fed. Credit Union v. Newsome,* 399 S.E.2d 444 (S.C. Ct. App. 1990) (affirming an award of attorney's fees based upon an hourly rate even though agreement with client was contingency-based); *Jackson v. Speed,* 486 S.E.2d 750 (S.C. 1997) (citing *Ada Cnty. Highway Dist. V. Acarrequi,* 673 P.2d 1067 (Idaho 1982) (the court should not automatically adopt the contingent fee or contractual agreement)); *Lanier v. Moore-Handley, Inc.,* 575 So.2d 83 (Ala. 1991) (a fee agreement between the client and his attorney is not conclusive evidence of a reasonable attorney fee; therefore, the court affirmed an award which exceed the agreed upon hourly rate); *Lea Co. v. North Carolina Bd. of Transp.,* 374 S.E.2d 686 (N.C. 1989) (attorneys' fees assessed must be reasonable and contingency fee contract does not control).

Defendant also argues that the South Carolina Court of Appeals decision in *Vick* does not support Plaintiffs' contention that they are entitled to recover the amount of the contingency fee contract that they signed with the Bell Legal Group.  *Vick,* 556 S.E.2d at 700-01.  Defendant argues "[t]he only language in *Vick* dealing with attorneys fees—even though it is dicta—simply

7

states that the fees must be reasonable. Santee Cooper does not dispute that any attorneys' fees awarded must be reasonable." Def's Mem. at 7-8.

Finally, Defendant argues that the Supreme Court decision in *Dohany v. Rogers,* 281 U.S. 362, 368 (1930), directly rejects Plaintiffs' argument that they are entitled to attorneys' fees based upon a percentage of the recovery because they must be reimbursed for their 40% attorneys' fees in order to be given the "just compensation" to which they are entitled under the federal and South Carolina constitutions. In *Dohany,* the Supreme Court held that "[a]ttorneys' fees and expenses are not embraced within just compensation for land taken by eminent domain." *Id.* Therefore, Defendant argues that Plaintiffs are only entitled to reasonable attorneys' fees pursuant to South Carolina Code section 28-11-30 and not as an element of just compensation.

The Court finds that Plaintiffs' contingency agreement with the Bell Legal Group is merely one of many factors to be taken into consideration in determining the reasonable amount of attorneys' fees due to the Plaintiffs pursuant to South Carolina Code section 28-11-30. While the South Carolina Court of Appeals' language in *Vick* concerning the amount of reasonable attorneys' fees is only dicta as the issue was not preserved for appeal, the discussion in *Vick* is relevant to determining the method of attorney's fees in this case. However, *Vick* only demonstrates that after analyzing the six factors a court should consider in determining a reasonable attorney's fee, a court *could* conclude that a reasonable attorney's fee under the circumstances of the particular case is an amount close to or equal to the contingency fee contract. However, *Vick* does not hold that the contingency fee contract controls the determination of what is a reasonable attorney's fee in an inverse condemnation action. In fact, South Carolina law specifically rejects the notion that a contingency fee contract controls a

8

court's determination of reasonable attorneys' fees due to a plaintiff pursuant to a statute mandating the award of attorney's fees.  *See supra* at 7.  Furthermore, Plaintiffs' argument that they are entitled to attorneys' fees based upon their contingency fee contracts in order to satisfy the "just compensation" to which they are entitled under the federal and South Carolina constitutions is without merit as it expressly conflicts with the United States Supreme Court's decision in *Dohany*, 281 U.S. at 368.  Therefore, the Court finds that for an award of attorneys' fees pursuant to South Carolina Code section 28-11-30, an award of fees based solely upon the contingency fee contract between Plaintiffs and the Bell Legal Group is improper.

The overriding benchmark for award of attorneys' fees under either method for calculation of attorneys' fees is that the attorneys' fees must be "reasonable."  *Layman,* 658 S.E.2d at 331.  In this case, Defendant notes in its brief that Plaintiffs have recovered damages in the total amount of approximately $219,399,957.00.  The Court finds that an award of attorneys' fees for forty-percent of the recovered damages—$87,759,983.00—is unreasonable.

In determining an award of attorneys' fees, South Carolina courts have historically relied on six common law factors of reasonableness: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) the professional standing of counsel; (4) the contingency of compensation; (5) the beneficial results obtained; and (6) the customary legal fees for similar services.  *See Jackson v. Speed,* 486 S.E.2d 750, 760 (S.C. 1997).  In determining a reasonable attorneys' fee in this case, the Court finds that the formula for computation must not be simply arrived at by taking a percentage of the overall recovered damages based upon Plaintiffs' contingency agreement.  This is particularly true in an inverse condemnation action where taxpayers generally pay the bill.  *See Salton Bay Marina, Inc., v. Imperial Irrigation Dist.,* 218 Cal. Rptr. 839 (Cal. App. 1985).  The language of South Carolina Code section 28-11-30

9

supports an interpretation that attorneys' fees should be objectively measured. By stating fees must be both reasonable and "actually incurred," "the Legislature intended to protect the public from both unreasonable fee awards as well as from fee awards that bear no relationship to the amount of attorney time actually incurred in the preparation and trial of the case." *Id.* Despite Plaintiffs' suggestion otherwise, this intent is not negated by section 28-11-30's language of reimbursement. *Id.* Rather, by stating the court should reimburse a plaintiff for his reasonable attorneys' fees, the Legislature is instructing the court to award plaintiff actual attorneys' fees he or she incurred to the extent the fees are reasonable. Reasonableness must not be viewed in light of the reasonable expectation of the client. As stated by the court in *Salton Bay,*

> When the award is paid by the client, the inquiry must focus on any agreement the client bargained for and agreed to. Necessarily, the reasonableness of the agreed upon fees must be viewed in light of the reasonable expectation of the client and the circumstances which existed at the time he executed the agreement. In contrast, when the award is paid by the public entity, the bargaining in reaching a contingency fee agreement is of doubtful value since the bargaining was done by the client and his attorney rather than by the public entity and the bargaining is less likely to be a guarantee of reasonableness. If the public entity is bound to the contingent fee agreement, then the client lacks incentive to keep the attorney's share reasonable since the attorney's share will neither come out of the client's recovery nor be paid by the client.

*Id.* Therefore, the Court finds that awarding attorneys' fees based solely on the contingency fee agreement between Plaintiffs and the Bell Legal Group is inappropriate in this case and proceeds to award attorneys' fees based upon the six common law factors of reasonableness set forth above. As in *Layman,* the Court gives enhanced consideration to three of these factors in determining an award of reasonable attorneys' fees: specifically, the actual amount of work performed, the customary legal fees for similar services, and the benefit obtained for all Plaintiffs. *Layman,* 658 S.E.2d at 333. Emphasizing these criteria remains consistent with

10

awarding fees pursuant to a fee-shifting statute, as discussed above. Therefore, the Court begins its analysis of the actual amount of work performed and the customary legal fees for that work.

Defendant sets forth a table of hours spent on this case by Plaintiffs' lawyers, paralegals, and staff and claims that Plaintiffs "do not dispute that the hours listed above were incurred for the entire action and for the prosecution of all causes of action." Defendant claims the Plaintiffs' lawyers, paralegals, and staff worked the following hours throughout the pendency of this entire case:

(1)   J. Edward Bell:       1,696 hours
(2)   Richard Kelly:        1,134 hours
(3)   J. Ryan Heiskell:     403 hours
(4)   Jim Shubert:          1,571 hours
(5)   Associate Attyns:     296 hours

Defendant claims that "attorneys for the Plaintiffs have also submitted that their paralegals worked the following hours throughout the pendency of this case:

(1)   Dawn J. Bell:         603 hours
(2)   Brenda Engler:        2,878 hours

Defendant also claims that "attorneys for the Plaintiffs have submitted that their staff worked the following hours throughout the pendency of this case:

(1)   Staff:                694 hours (291 hours for the Leatherwood Firm staff and 403 hours for Bell Law Group staff)

Defendant claims that the hours listed above should be reduced by 25% percent to reflect the number of hours incurred in the prosecution of the inverse condemnation claims of the successful Plaintiffs only. Defendant argues that under the statute allowing for recovery of attorneys' fees, Plaintiffs are only entitled to recover reasonable attorneys' fees for the amount of time expended on the inverse condemnation cause of action upon which those Plaintiffs who recovered were successful. *See Layman,* 658 S.E.2d at 333-34. Defendant argues that a big

11

portion of Plaintiffs' claims was a cause of action for negligence, with which Plaintiffs were unsuccessful.  Defendant also claims that the hours listed above include time spent on causes of action for trespass and on Plaintiffs whom the Court found to be barred by the statute of limitations.  Therefore, Santee Cooper requests that the number of hours listed above be reduced to reflect those hours reasonably spent on the prosecution of the inverse condemnation claims of the successful Plaintiffs only.

Defendant next turns to what it considers to be the reasonably hourly rate for purposes of the lodestar calculation.  Santee Cooper proposes the following reasonable fee schedule:

| | | | | |
|---|---|---|---|---|
| (1) | J. Edward Bell: | 1,696 hours | $600.00/hr | $1,017,600.00 |
| (2) | Richard Kelly: | 1,134 hours | $350.00/hr | $396,900.00 |
| (3) | J. Ryan Heiskell: | 403 hours | $200.00/hr | $80,600.00 |
| (4) | Jim Shubert: | 1,571 hours | $150.00/hr | $235,650.00 |
| (5) | Associate Attyns: | 296 hours | $150.00/hr | $44,400.00 |
| (6) | Paralegals | 3,481 hours | $80.00/hr | $278,480.00 |
| (7) | Staff: | 694 hours | $50.00/hr | $34,700.00 |

Again, Defendant claims the number of hours listed in this table should be reduced by 25% to account for the time spent litigating the negligence and trespass claims and the 2003 claims barred by the statute of limitations.  Defendant also notes that in addition to the hourly fees listed above, Plaintiffs assert that they incurred $82,721.00 for legal consultants, and Santee Cooper does not dispute that such fees are recoverable by Plaintiffs to the extent that these fees were incurred for the prosecution of the inverse condemnation action at the appellate level.

Finally, Defendant submits that enhancing the hourly figures listed above by a multiplier may be necessary to reflect exceptional considerations in this case.  For example, Defendant notes that Plaintiffs' attorneys assert that they spent significantly more time on this case than was reflected in their documentation.  Plaintiffs' attorneys assert that they failed to keep adequate records of their time and that lead counsel, Mr. Bell, actually worked three to four times the

amount of hours recorded. Therefore, Defendant suggests that should the Court wish to recognize the Plaintiffs' claim that they are entitled to more hours than they have submitted and documented, or to recognize any other exceptional considerations addressed by Plaintiffs in their brief and affidavits, the Court should insert an appropriate multiplier, between 1.15 and 1.33, to compensate Plaintiffs for such circumstances.

As thoroughly discussed above, Plaintiffs "submit that it is *outrageous* for Santee Cooper to oppose the Plaintiffs' request for percentage-of-recovery attorney fees." Pls' Reply Brief at 1 (emphasis in original). However, "[o]ut of an abundance of caution," Plaintiffs address and object to the hourly/Lodestar analysis as suggested by Defendant. First, Plaintiffs object to the number of hours Defendant suggests Mr. Bell spent on this case. In his affidavit, Mr. Bell testifies that the true number of hours he spent on this case ranges between 7,000 and 10,000 hours over the last two decades. Mr. Bell explains that he did not keep detailed time records for this case because he "had no reason to believe when [he] took on this epic case that someday there would be the chance that my clients' reimbursement for attorneys' fees would be limited to those of which I had kept a detailed record; I was and continue to be, as the Court well knows, a plaintiff's lawyer who takes on cases based upon a contingency fee." Bell Aff. at 2.

Plaintiffs also object to Defendant's contention that the Court should reduce the total number of hours by 25% to reflect work on claims other than the successful inverse condemnation claims. Plaintiffs argue that such a reduction is unnecessary and that much of the work performed was used equally for all claims. Plaintiffs assert that work on the negligence claim ceased in March of 1997 when the jury returned its verdict in favor of Santee Cooper on the negligence claim only. Additionally, Plaintiffs claim that "while some amount of work admittedly was conducted on the discrete legal issues pertaining to the trespass claims

throughout the litigation, and on preparing the pleading for a few other claims in the 2003 lawsuit, this worked [sic] was all necessitated by Santee Cooper's refusal to pay the Plaintiffs just compensation on their inverse condemnation claim." Moreover, these claims all involved proof of the same facts and were subject to some of the same defenses. Plaintiffs argue that a reduction in the number of hours to reflect work on claims other than the successful inverse condemnation claims is unnecessary when the same facts are required to prosecute the other claims and the causes of action are inextricably intertwined. *See Stewart Title Co. v. Sterling,* 822 S.W2d 1, 11-12 (Tex. 1991), *modified by Tony Gullo Motors I v. Chapa,* 212 S.W.3d 299, 313-14 (Tex. 2006).

Assuming arguendo that some reduction in hours should be made to reflect attorney work performed on nonrecoverable claims, Plaintiffs claim that Santee Cooper's proposed 25% reduction should be rejected and that the Court should reduce the number of total hours expended by 3%. *See Layman,* 658 S.E.2d at 320 ("Only in an abundance of caution, however, do we reduce the number of total hours expended by three percent (3%), rounded down to the nearest tenth, in order to account for any time devoted solely to the Working Retirees' claims, thereby arriving at what we view as a 'reasonable' number of hours expended on the TERI participants' claims"); *Edmonds v. U.S.,* 658 F. Supp. 1126 (D.S.C. 1987) (reducing hours by 2 to 3% to reflect work on claims not eligible for an attorney fee award).

Finally, Plaintiffs argue that if an hourly/Lodestar method is used, a multiplier of at least three should be used. Plaintiffs argue that the exceptional circumstances of this case justify a multiplier between three and five.

> To say that this case involved exceptional circumstances is a bit of an understatement. The litigation lasted 25 years and is still going. There were two separate appeals to the two different United States Circuit Courts of Appeal. There was an intervention by a new party and a motion to transfer nearly a decade

14

after the first lawsuit was filed. There was a full trial on liability, mediations for each Plaintiff, and then two separate trials on damages for two groups of Plaintiffs. The results for the clients were outstanding—a total recovery of over $219 million. The Plaintiffs submit that 3 *should be the minimum multiplier* and that a multiplier of 5 would probably be more appropriate given the foregoing exceptional circumstances.

Pls' Reply Mem. at 13.

The Court finds the hours and corresponding rates as set forth by Defendant in the table listed above are an accurate and reasonable reflection of the amount of work performed and the customary legal fees for similar services, with the exception of the hours listed for Mr. Bell. Defendant claims that Mr. Bell only spent 1,696 hours throughout the pendency of this entire case. Plaintiffs claim that the "absurdity of this effort to latch on to the 1600-hour number [Defendant] mentioned in their response can be easily shown considering the fact that 1600 hours over 25 years would mean that Mr. Bell spent an average of 64 hours (1 ½ weeks) per year. Santee Cooper alone filed a claim for thousands of hours of attorneys' fees with the Corp of Engineers after the 1997 trial." Pls' Reply Br. At 9. As stated above, Mr. Bell states in his affidavit that he spent seven to ten thousand hours working on this case over the course of the last two decades. After reviewing the record in this case and having worked with the parties on this case over the last two decades, the Court agrees with Plaintiffs that Defendant's claim that Mr. Bell only spent 1,696 hours of total time throughout this case largely underestimates the amount of time Mr. Bell spent on this case. The Court finds that Mr. Bell's testimony that he spent 10,000 hours over the last two decades is an accurate and reasonable reflection of the amount of time Mr. Bell spent on this case. Defendant does not object to Mr. Bell's testimony that he spent approximately 10,000 hours on this case on any grounds except for the fact that Mr. Bell cannot produce detailed time records reflecting all 10,000 hours. However, Plaintiffs note that Mr. Bell is a Plaintiff's lawyer who does not keep detailed time records when working on a

15

contingency basis and "[i]t is not appropriate for the Court to reject believable testimony of responsible attorneys and *delete* time simply because it is not supported by contemporaneous time records. The absence of such records as to some hours . . . is not a sufficient objection, where no claim is made that the time was not, or should not, have been spent." *Edmonds,* 658 F. Supp. at 1135, n.18.

However, the Court slightly reduces the hours listed in the Defendant's table above to reflect the time spent on unrecoverable claims. The Court agrees with Plaintiffs that the overwhelming amount of attorney fee time claimed is for legal services that are so intertwined with the inverse condemnation claim that segregation of time is unnecessary. As noted by Plaintiffs in their Reply Memorandum, work on the negligence claim ceased in 1997 and the bulk of the work was on damages and matters applicable to all claims. However, out of an abundance of caution the Court reduces all hours by 3%, rounded down to the nearest hour, to reflect time spent on unrecoverable claims. *See Layman,* 658 S.E.2d at 320; *Edmonds,* 658 F. Supp. 1126.

Finally, the Court finds that the Defendant's hourly rates for attorneys, paralegals, and staff are reasonable and represent the customary legal fees for the type of work performed in this case. Plaintiffs object to the disparity between the hourly fee of Richard Kelly and Mr. Heiskell and that of Mr. Bell. Defendant has suggested an hourly rate of $600 for Mr. Bell, $350 for Mr. Kelly, and $200 for Mr. Heiskell. Mr. Bell has been practicing law since 1979 and has been the Senior partner of his firm since 1983. He has extensive experience in civil litigation and has been representing the Plaintiffs in this action since 1985. Mr. Kelly has been licensed to practice law in South Carolina since 1968. Mr. Kelly also has extensive experience in complex business litigation. Mr. Kelly practiced with a large general practice firm in Greenville—Leatherwood,

16

Walker, Todd & Mann—from 1968 until December 2008. Since 2008, Mr. Kelly has been in private practice. Mr. Kelly undertook responsibility for Plaintiff John D. Hollingsworth in 2003, and in April 2009, Mr. Bell asked Mr. Kelly to assist with trial preparation on behalf of all Plaintiffs. Mr. Heiskell is an attorney with the Bell Legal Group and has been practicing law for three years. According to Plaintiffs, Mr. Heiskell was the litigation project manager and assisted in the research and writing of briefs in this case. The Court finds that the hourly rates as set forth by Defendant are reasonable and represent the customary legal fees in the market for the type of work performed. Although Mr. Kelly is a very experienced trial attorney and may have as much experience as Mr. Bell, Mr. Bell served as the lead attorney on this case and has been involved with Plaintiffs since 1985. The Court also finds that $200 per hour is a reasonable rate for Mr. Heiskell as he is an associate lawyer with the Bell Legal Group and has only been practicing law for three years.

Based on the foregoing, the Court calculates the hourly fee in this case as follows:

| | | | | |
|---|---|---|---|---|
| (1) | J. Edward Bell: | 9,700 hours | $600.00/hr | $5,820,000.00 |
| (2) | Richard Kelly: | 1,100 hours | $350.00/hr | $385,000.00 |
| (3) | J. Ryan Heiskell: | 390 hours | $200.00/hr | $78,000.00 |
| (4) | Jim Shubert: | 1,524 hours | $150.00/hr | $228,600.00 |
| (5) | Associate Attyns: | 287 hours | $150.00/hr | $43,050.00 |
| (6) | Paralegals: | 3,377 hours | $80.00/hr | $270,160.00 |
| (7) | Staff: | 673 hours | $50.00/hr | $33,650.00 |
| | | | **TOTAL**: | $6,858,460.00 |

Using the calculation of $6,858,460.00 as a starting point for a reasonable fee in this case, the Court further concludes that enhancing this figure through a multiplier is necessary to reflect the exceptional circumstances of this case. *See Layman,* 658 S.E.2d at 334 (*citing Blum v. Stenson,* 465 U.S. at 897 (1984) (recognizing that an enhanced lodestar award may be justified "in some cases of exceptional success"); *see also Hyatt v. Apfel,* 195 F.3d 188, 192 (4th Cir.

17

1999) (affirming a multiplier of 1.333 applied to a lodestar calculation of attorneys' fees to be paid by the defendant government entity on account of the "exceptional results" obtained by plaintiffs' counsel); *Edmonds,* 658 F. Supp. at 1144 (applying a multiplier of 1.15 to 1.25 to the lodestar fees for the plaintiffs' various attorneys to account for the "exceptional circumstances" surrounding the amount of money involved and the results obtained in the case). The Court has first hand familiarity as to the nature, extent, and difficulty of these two complex cases. The two cases alleged inverse condemnation, negligence, and trespass by Santee Cooper. The cases were bifurcated as to liability and damages. The first case was filed in 1993 and the second in 1995, and final judgment was not rendered until January of 2010. The Plaintiffs and their attorneys have been litigating these cases for over 17 years. This case has also been subject to appeal by two separate Circuit Courts of Appeal, the Fourth and Federal Circuits. The Plaintiffs were successful on their trespass and inverse condemnation claims for a total recovery of over $219 million. Therefore, the Court adjusts the calculation above by 1.25% to reflect the exceptional circumstances of this case. Therefore, the attorneys' fees as calculated above are adjusted as follows:

|  |  |
|---|---|
| Base Attorneys' Fees: | $6,858,460.00 |
| Multiplier: | x 1.25 |
| Total Attorneys' Fees: | $8,573,075.00 |

Finally, Plaintiffs are entitled to costs reasonably incurred in the prosecution of their inverse condemnation cause of action. Plaintiffs have submitted a claim for costs in the amount of $1,900,244.00. Defendant "objects to the award of $1.9M to Plaintiffs for costs, even if such costs were incurred in the prosecution of the inverse condemnation claim only, and requests that the amount be reduced due to the fact that some of the Plaintiffs' costs seek reimbursement for

18

numerous items that are unsupported and otherwise unreasonable." Def's Mem. at 14. For example, Defendant notes that "Plaintiffs seek reimbursement of $151,645.04 for construction and landscaping of a 'model' house, or as the Plaintiffs' counsel stated, a 'faux' house, in 2009, as well as additional itemized expenses associated with the 'model' and the party staged at that site. The 'model' house was totally unnecessary for the damages phase of the proceedings and plaintiffs should not be reimbursed for these expenses." Id. Defendant claims that Plaintiffs have also included numerous payments for travel, meal and other unidentified expenses that are not supported by any records of actual costs. Defendant point to a $2,000 charge for unspecified "meal expense" and $2,000 charge for "cash for trial expenses." Defendant claims that "[o]ther unreasonable expenses include such items as over $33,000 in financing charges for late payment of consultant invoices and charges for travel by the Bell Group's privately owned airplane to and from locations apparently unrelated to this case." Id. Based on what Defendant claims are unreasonable expenses, Defendant requests the Court reduce the amount of costs by at least 25% to reflect unreasonable costs as well as costs incurred in the prosecution of other causes of action outside of the inverse condemnation claim.

Plaintiffs claim that they "seek reimbursement of *no* cost which was *not* incurred as a direct consequence of fighting this case for the last 25 years." Pls' Reply Mem. at 15. Plaintiffs argue that as to the model house, "the 150K-Dollar [sic] piece of evidence was innovative, useful, and not excessive in light of the $219 Million Dollars that was eventually awarded to Plaintiffs." Id. As to Defendant's claims about costs that may not have been accompanied by actual receipts or other documentation, Plaintiffs claim that "they took the steps to acquire supporting Affidavits to support all of their costs" and are willing to make witnesses available to

19

provide testimony to the Court to further account for each and every expense listed as a cost in this case.

After reviewing the costs claimed by Plaintiffs in this case, the Court finds that the majority of the costs are reasonable and, as such, the Plaintiffs are entitled to reimbursement. However, as noted by Defendant, there are some costs that are unreasonably high, including travel costs on the Bell Legal Group's private plane (for example, a $6,100 flight charge for a roundtrip flight from Georgetown, SC on June 20, 2007 to Manassas, VA and returning on June 21, 2007). There are also unspecified charges such as the $2,000 "meal expense" as discussed in Defendant's Memorandum in Opposition to Plaintiffs' Motion for Fees and Costs. In light of some unreasonably high costs and in light of the fact that some fees are unrelated to the inverse condemnation claims, the Court finds that a reduction in costs by 10% is necessary to achieve a reasonable cost reimbursement in this case. Therefore, the Court awards $1,710,219.60 in costs.

## CONCLUSION

Therefore, based on the foregoing, the Court awards $8,573,075.00 in attorneys' fees and $1,710,219.60 in costs, for a total of $10,283,294.60 to Plaintiffs.

**AND IT IS SO ORDERED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**March 30, 2011**
**Charleston, SC**